UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**RENEE K. PORTER,**
**(f/k/a Renee P. Dubinski)**
c/o Rettko Law Offices, S.C.
15460 W. Capitol Drive, Ste. 150
Brookfield, WI 53005,

        Plaintiff,

vs.                                  Case No. _____

**CITY OF NEENAH,**
211 Walnut Street
Neenah, WI 54956,
**POLICE CHIEF JOHN WILKINSON,**
In his individual and official capacity
2111 Marathon Avenue
Neenah, WI 54956,

        Defendant.

---

## COMPLAINT

---

The plaintiff, Renee K. Porter (f/k/a Renee P. Dubinski), by her attorney William R. Rettko, hereby alleges and shows to the court as follows:

NATURE OF THE ACTION

Plaintiff brings this action to secure her civil right to equal employment opportunities and to have the same terms, conditions and privileges of employment with the defendant as non-African Americans and to seek redress for past and current violations of those rights in the form of back pay and lost benefits.

JURISDICTION AND VENUE

1.     Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and the Equal Employment Opportunity Commission's Notice of Right to Sue within ninety days; which is attached hereto as Exhibit 1 and incorporated as if set forth at length herein, and as authorized by 42 U.S.C. §§ 1981 and 2000e.

## PARTIES

2. The plaintiff, Renee K. Porter ("Porter"), an African American female, formally known as Renee P. Dubinski, is an adult resident of the state of Wisconsin, and was continuously employed at all material times hereto by the City of Neenah Police Department ("NPD").

3. Porter filed a timely charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and has received a Notice of Right to Sue dated August 26, 2013 which is attached hereto as Exhibit 1.

4. The defendant, City of Neenah ("City"), is a City incorporated under the laws of the State of Wisconsin, and maintains its principal offices at 211 Walnut Street, Neenah, Wisconsin, and who maintains a police department ("NPD") and was at all material times hereto the employer of the plaintiff.

5. The defendant, Chief Kevin Wilkinson ("Chief Wilkinson"), is the Chief of Police for the NPD and is a defendant in both his individual and official capacities, and is an adult resident of the State of Wisconsin.

## STATEMENT OF CLAIMS

6. Porter began her employment with the NPD on June 6, 2011.

7. On or around September 24, 2012, the NPD received an external complaint alleging that Porter was dating a known drug dealer which caused the NPD to conduct an investigation into these allegations.

8. On September 25, 2012, the NPD through two of its captains and Chief Wilkinson conducted a 3½ hour integration of Porter questioning her about her personal life, her marriage, problems with her marriage and sexual activity.

9. On September 27, 2012, Chief Wilkinson informed Porter that she was terminated and when asked why, he indicated they did not need to give a reason because she was a probationary employee.

10. Porter then requested her personnel file as she had questions about having completed her probationary period.

11. On October 8, 2012, Chief Wilkinson confirmed in writing that Porter's probationary period had in fact ended on June 6, 2012, she was a permanent employee of the NPD, and had full protection of Wis. Stats. § 62.13 meaning she could only be terminated for "just cause" and as such, was fully reinstated as a permanent employee of the City with all pay and benefits but immediately placed on administrative leave with pay retroactive to September 25, 2012, meaning she was not to maintain or possess her department issued firearm, badge, identification card or other department property because the NPD had on September 24, 2012 received an allegation she was maintaining a close relationship with a person who may be involved in trafficking illegal substances.

12. As part of the NPD policy manual, Section I-Chapter II(1)(2) states:

> Officers/employees shall avoid regular or continuous association: or dealing with persons whom they know, they should know, or they have been advised are persons under criminal investigation or indictment, or who have a reputation in the community or the Department for present involvement in felonious or criminal behavior, except as necessary to the performance of official duties or where unavoidable because of other personal relationships of the officer/employee.

13. It was at that time, the NPD also charged Porter with dishonesty because during the 3½ hour interrogation interview that took place on September 25, 2012 she allegedly was not honest in violation of Section G (5) of the Internal Affairs/Citizens Complaint policy within the NPD.

14. On November 1, 2012, Porter was again interviewed by the NPD after being provided a written Notice of Allegations confirming they were investigating her for maintaining a close relationship with a person who was regarded as being involved in criminal activity and for dishonesty during the investigative interview that took place on September 25, 2012.

15. Porter having never left the status of being on administrative leave was again interviewed by the NPD regarding this internal investigation on February 14, 2013.

16. On March 12, 2013, Chief Wilkinson filed a Statement of Charges requesting the termination of Porter claiming she violated the rule dealing with a person she knew or should know or advised was under criminal investigation or had a reputation for present involvement in felonies or criminal behavior for allegedly violating the truthfulness rule and for violating an order in talking about this investigation with the weightlifter.

17. Chief Wilkinson's charges requesting Porter's termination allege that at the September 25, 2012 interview Porter was shown a person she weight-lifted who had a misdemeanor violation in 1999 on his CCAP record.

18. At no time was Porter provided any information to put her on notice of any present criminal activity or that this person had a reputation in the community for present involvement in felonies or criminal behavior, nor did she know of any present involvement in felonies or criminal behavior of this person.

19. Chief Wilkinson also alleged Porter was dishonest in answering questions during her internal interviews regarding:

   (a) About her reason for requesting sick leave on September 6, 2012;

   (b) By indicating that she saw her husband upon going home on September 6, 2012;

   (c) About the extent of her relationship with the weightlifter who allegedly was involved in selling illegal substances;

   (d) By indicating she never spoke to anyone about her personal relationship with the weightlifter except with her husband;

   (e) By indicating she never had discussions with others about the weightlifter being a possible drug dealer;

(f) By indicating she never had discussions with others about concerns for her job or for associating with the weightlifter based on his involvement with drugs.

20. At the subsequent hearing held before the Neenah Police Commission, Chief Wilkinson indicated that any finding of a violation regarding the truthfulness rule is an automatic terminable offense because it would be problematic for Porter to even testify in a criminal prosecution case if found guilty of being untruthful as he was required to report all persons violating the truthfulness rule to the district attorney's office who must provide that information to defense attorneys as potential exculpatory evidence allowing all such officers to be questioned regarding their credibility.

21. There are several police officers with the NPD, none of whom are African American, that have violated the truthfulness rule but were never disclosed as violating the truthfulness to the District Attorney's Office up through the time of the hearing against Porter with Neenah Police Commission.

22. There are other police officers with the NPD, none of whom are African American that violated direct orders but have not been terminated.

23. There are other police officers with the NPD, none of whom are African American that have association with persons known to be in present criminal involvement, but have not been terminated

FIRST CAUSE OF ACTION
VIOLATION OF 42 U.S.C. § 2000-e

24. Reallege and incorporate herein by reference paragraphs 1 through 23 of this Complaint as if set forth at length herein.

25. The defendant, City of Neenah, through its Police Chief terminated Porter who is an African American without violating the association rule and having retained non-African Americans who violated the truthfulness rule.

26. The City's actions through its Police Chief to terminate Porter denied her as an African American an equal employment opportunity and unfairly treated her as the City has a pattern and practice of treating non-African Americans more favorably in that when non-African Americans were found guilty of violating the truthfulness rule, they kept positions within the NPD.

27. The City's actions through its Police Chief to terminate Porter denied her as an African American an equal employment opportunity without violating a direct order and having retained non-African Americans who violated direct orders.

28. As a result of City's actions to deny plaintiff who is an African American equal employment opportunities, they have caused her to suffer compensatory damages including loss of wages, loss of benefits, emotional distress, loss of reputation, mental anguish, loss of future wages and benefits, attorney fees and other expenses as allowed for my law.

29. The City's combined actions in depriving plaintiff who is an African American equal employment opportunities as a result of her race pursuant to 42 U.S.C. § 2000-e and based upon deliberate and reckless indifference to allow for this unequal employment treatment to occur entitles plaintiff to punitive damages as assessed by a jury.

SECOND CAUSE OF ACTION -- VIOLATION OF 42 U.S.C. § 1981

30. Reallege and incorporate herein by reference paragraphs 1 through 29 of this Complaint as if set forth at length herein.

31. Chief Wilkinson's actions to remove Porter who is an African American from her position as a police officer deprived her full and equal benefit of all laws to enforce the terms and conditions of employment with the City of Neenah and to receive and enjoy all of the benefits and privileges of her contractual relationship with the City and the terms and conditions of her employment.

32. As a direct and proximate cause of Chief Wilkinson's actions to remove Porter from the NPD as a police officer and to treat non-African Americans in a more favorable manner by allowing them to violate the truthfulness rule but to maintain positions with the NPD and in allowing non-African Americans to associate with persons who committed misdemeanors in the past, and for treating non-African Americans in a more favorable manner by allowing them to violate direct orders, but to maintain their positions has caused Porter to suffer compensatory damages, including but not limited to, loss of back wages, loss of future wages, mental anguish, loss of reputation, attorney fees and other expenses as allowed by law.

33. Chief Wilkinson's reckless indifference and intentional discrimination against Porter and to intentionally fail to remedy or prevent equal employment opportunities for Porter who is African American entitles her to punitive damages.

WHEREFORE, the plaintiff Renee K. Porter, respectfully requests that this court:

A. Assume jurisdiction over this case;

B. Declare that defendants' actions have caused plaintiff to suffer a loss of equal employment opportunities because she is an African American in violation of 42 U.S.C. § 2000-e;

C. Declare that defendants' actions prevented plaintiff full and equal benefits of all laws of the United States of America to be free from discrimination based on her race (African American) in violation of 42 U.S.C. § 1981 and the Fourteenth Amendment;

D. Award plaintiff compensatory damages in the amount of $300,000 against the defendants;

E. Award plaintiff punitive damages against the defendants in an amount to be determined by a trier of fact on the ground that defendants' conduct complained of herein was done knowingly, willfully and in bad faith in violation of plaintiff's right to be free from discrimination based on the fact she is African American;

F. Award plaintiff loss of past and future wages, together with her costs, disbursements and attorney fees in bringing this action; and

G. Grant such further relief as the court deems just and necessary.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted, this 20th day of November, 2013.

**RETTKO LAW OFFICES, S.C.**
Counsel for Plaintiff

P.O. ADDRESS:
15460 W. Capitol Drive, Ste. 150
Brookfield, WI 53005
(262) 783-7200

_____
William R. Rettko
State Bar No. 1002608